UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE GOODYEAR TIRE &
RUBBER COMPANY, *et al.*

VERSUS

CEVA LOGISTICS
SINGAPORE PTE LTD, *et al.*

CIVIL ACTION

NO. 22-4561

SECTION M (2)

## ORDER & REASONS

Before the Court is a motion by defendants CEVA Logistics Singapore Pte Ltd ("CEVA Singapore"), CEVA Freight LLC ("CEVA Freight"), Pyramid Lines Singapore Pte Ltd ("Pyramid"), and CEVA Logistics (Thailand) Ltd ("CEVA Thailand") (collectively, the "CEVA Defendants") to dismiss counts 1, 3, 5, 6, 9, and 11 of plaintiffs' first amended complaint pursuant to Rule 12(b)(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[1]  Plaintiffs The Goodyear Tire & Rubber Company, Goodyear Orient Company (Private) Limited, Navigators Insurance Company, Inc., and Navigators Management Company (collectively, the "Goodyear Plaintiffs"), along with plaintiffs Societe Des Matieres Premieres Tropicales Pte Ltd (SMPT), Michelin North America Inc., HDI Global SE, AIG Europe SA, and Chubb European Group SE (collectively, the "Michelin Plaintiffs," and together with the Goodyear Plaintiffs, "Plaintiffs") respond in opposition.[2]

---

[1] R. Doc. 33.
[2] R. Doc. 38.

Also before the Court is a motion by defendant Coastal Cargo Company, LLC ("Coastal") to dismiss Plaintiffs' bailment claims against it pursuant to Rule 12(b)(6).[3]  Plaintiffs respond in opposition,[4] and Coastal replies in further support of its motion.[5]

Having considered the parties' memoranda, the record, and the applicable law, the Court denies both motions to dismiss.

## I.      BACKGROUND

This case concerns water damage to two shipments of processed natural rubber.  The Goodyear Tire & Rubber Company and Goodyear Orient Company (Private) Limited were the owners of the "Goodyear shipment," which was insured by Navigators Insurance Company, Inc., and Navigators Management Company.[6]  Societe Des Matieres Premieres Tropicales Pte Ltd (SMPT) and Michelin North America Inc. were the owners of the "Michelin shipment," which was insured by HDI Global SE, AIG Europe SA, and Chubb European Group SE.[7]  The CEVA Defendants acted "as common or private carriers for hire, vessel charterers, and/or transportation intermediaries" for the Goodyear shipment and Michelin shipment from Indonesia to New Orleans.[8]  CEVA Singapore, CEVA Thailand, and/or Pyramid chartered the *Intan Daya 7* as a feeder vessel to transport the cargo from Indonesia to Thailand, and the *Amber Star* to complete the transit of the cargo from Thailand to New Orleans.[9]  CEVA Singapore and/or Pyramid allegedly hired Coastal, a stevedore and terminal operator, to receive and store the Goodyear shipment upon its arrival in New Orleans.[10]  And CEVA Singapore, CEVA Thailand, and/or

---

[3] R. Doc. 34.
[4] R. Doc. 37.
[5] R. Doc. 41.
[6] R. Doc. 28 at 2.
[7] *Id.* at 2-3.
[8] *Id.* at 3-4.
[9] *Id.* at 5.
[10] *Id.* at 4-5.

Pyramid allegedly engaged Coastal to receive and store the Michelin shipment upon its arrival in New Orleans.[11]

The Goodyear Plaintiffs allege that, on September 20, 2021, CEVA Singapore, CEVA Freight, and Pyramid received in Indonesia 71,100 bales of processed natural rubber owned by the Goodyear Plaintiffs, and then on October 10, 2021, another 37,440 bales in Thailand, for a total of 108,540 bales.[12]  Similarly, the Michelin Plaintiffs allege that on September 20, 2021, CEVA Singapore, CEVA Thailand, CEVA Freight, and Pyramid received the Michelin shipment in Indonesia.[13]  All bales were allegedly delivered to the vessels in good order and condition, but arrived in New Orleans wet and damaged.[14]  Plaintiffs allege that the bales were damaged during ocean transit before discharge and then further damaged after unloading when they were stored outdoors and uncovered at the port of New Orleans from November 18, 2021, through November 21, 2021.[15]

Plaintiffs filed this action on November 17, 2022.[16]  The CEVA Defendants and Coastal responded with motions to dismiss.[17]  Plaintiffs then filed an amended complaint, rendering moot the defendants' motions to dismiss.[18]

In the amended complaint, Plaintiffs allege several alternative causes of action.[19]  In count 1, the Goodyear Plaintiffs allege a carrier liability claim against CEVA Singapore and Pyramid.[20]

---

[11] *Id.* at 5.
[12] *Id.*
[13] *Id.* at 6.
[14] *Id.* at 5-6.
[15] *Id.*
[16] R. Doc. 1.
[17] R. Docs. 17; 27.
[18] R. Doc. 28.
[19] *Id.* at 7-40.
[20] *Id.* at 7-13.  Plaintiffs also name fictitious defendants in each of the counts, but such defendants will be ignored by the Court for purposes of the motions to dismiss.  *See, e.g., Turner v. II Diamond Motors, Inc.,* 995 F. Supp. 644, 648 n.24 (M.D. La. 1998).

The Goodyear Plaintiffs allege that, on August 31, 2021, they entered into a negotiated agreement (the "transportation agreement") by email with CEVA Singapore and Pyramid for the transport of the Goodyear shipment from Indonesia to New Orleans, and that this agreement was subject to the terms and conditions contained in both CEVA Singapore's customer proposal for ocean charter services and the global negotiated rate agreement between Goodyear Tire & Rubber Company and CEVA Logistics AG.[21]   According to the Goodyear Plaintiffs, under the terms of CEVA Singapore's customer proposal for ocean charter services, CEVA Singapore and Pyramid agreed to be responsible for the Goodyear shipment for at least 15 days of "warehousing" after discharge from the vessel, without additional charges.[22]  The Goodyear Plaintiffs further allege that the terms and conditions of the negotiated rate agreement take precedence over any conflicting terms in any bill of lading and it incorporates the Carriage of Goods by Sea Act ("COGSA") for shipments to or from United States ports.[23]  The Goodyear Plaintiffs allege that CEVA Singapore and Pyramid breached the transportation agreement by failing to deliver the cargo in good order and condition.[24]

Similarly, in count 7, the Michelin Plaintiffs bring a carrier liability claim against CEVA Thailand, CEVA Singapore, and Pyramid.[25]  The Michelin Plaintiffs allege that, on August 20, 2021, Societe Des Matieres Premieres Tropicales Pte Ltd (SMPT) and Michelin North America Inc. entered into a customer proposal for ocean charter services with CEVA Thailand for the transportation of the Michelin shipment from Indonesia to New Orleans that included the discharge and storage of the cargo after the voyage.[26]  The Michelin Plaintiffs allege that CEVA Thailand,

---

[21] R. Doc. 28 at 7-10.  Plaintiffs allege that CEVA Logistics AG is the parent or holding company of CEVA Singapore and Pyramid.  *Id.* at 9.
[22] *Id.* at 8.
[23] *Id.* at 10-11.
[24] *Id.* at 12-13.
[25] *Id.* at 25-28.
[26] *Id.* at 26-27.

CEVA Singapore, and Pyramid breached the customer proposal for ocean charter services by delivering the Michelin shipment in a wet and damaged condition.[27]

Count 2 is the Goodyear Plaintiffs' claim against Pyramid for carrier liability under the bills of lading.[28] The Goodyear Plaintiffs allege that Pyramid issued 11 bills of lading for the 71,100 bales of processed natural rubber it received in Indonesia, and another four bills of lading for the 37,440 bales received in Thailand.[29] According to the Goodyear Plaintiffs, these bills of lading are evidence that Pyramid received the Goodyear shipment in good order and condition on September 20, 2021, and October 10, 2021, respectively, and then Pyramid breached the bills of lading by delivering damaged goods in New Orleans.[30] Similarly, count 8 is the Michelin Plaintiffs' claim against Pyramid for carrier liability under the nine bills of lading Pyramid issued for the Michelin shipment.[31] The Michelin Plaintiffs also allege that the bills of lading were subject to COGSA and were breached when Pyramid delivered the cargo in a damaged condition.[32]

In count 3, the Goodyear Plaintiffs allege a bailment claim against CEVA Singapore and Pyramid.[33] The Goodyear Plaintiffs allege that, to the extent that CEVA Singapore and Pyramid's contractual responsibility for the Goodyear shipment terminated under the transportation agreement upon discharge of the cargo from the *Amber Star* at the port of New Orleans, they acted as bailees for hire in receiving, handling, and storing the Goodyear shipment after the cargo's discharge from the vessel.[34] The Goodyear Plaintiffs further allege that Coastal, acting as the agent or subcontractor of CEVA Singapore, Pyramid, and CEVA Freight, had exclusive possession of

---

[27] *Id.* at 27-28.
[28] *Id.* at 13-16.
[29] *Id.* at 14.
[30] *Id.* at 14-16.
[31] *Id.* at 29-31.
[32] *Id.*
[33] *Id.* at 16-19.
[34] *Id.* at 17.

the Goodyear shipment when it was stored in the port and they all collectively failed to safely care for and deliver the cargo in good order and condition to the Goodyear Plaintiffs.[35]  Count 9 is the Michelin Plaintiffs' similar bailment claim against CEVA Thailand, CEVA Singapore, Pyramid, and CEVA Freight.[36]

Count 4 is the Goodyear Plaintiffs' bailment claim against Coastal.[37]  The Goodyear Plaintiffs allege that CEVA Singapore, Pyramid, and CEVA Freight hired Coastal to discharge the Goodyear shipment from the vessel and store and care for it in the port of New Orleans, making Coastal a bailee with complete and exclusive possession of the cargo.[38]  The Goodyear Plaintiffs further allege that Coastal failed to safely care for and deliver the Goodyear shipment because it was delivered in a damaged and wet condition.[39]  And count 10 is the Michelin Plaintiffs' nearly identical bailment claim against Coastal.[40]

In count 5, the Goodyear Plaintiffs allege that CEVA Singapore, Pyramid, and CEVA Freight negligently hired or instructed Coastal to receive, store, and care for the Goodyear shipment, which resulted in the cargo being exposed to the elements and sustaining water damage.[41]  The Goodyear Plaintiffs state that their negligent hiring/instruction claim is asserted in light of CEVA Singapore and Pyramid's position that their contractual responsibility for the Goodyear shipment terminated upon discharge of the cargo from the vessel.[42]  Similarly, count 11 is the Michelin Plaintiffs' parallel claim against CEVA Thailand, CEVA Singapore, Pyramid, and

---

[35] *Id.* at 17-19.
[36] *Id.* at 32-34.
[37] *Id.* at 19-21.
[38] *Id.* at 19.
[39] *Id.* at 20-21.
[40] *Id.* at 34-37.  The only difference (aside from the amount of damages) is that the Michelin Plaintiffs allege that CEVA Thailand was also involved in hiring Coastal to care for the Michelin shipment.  *Id.* at 35.
[41] *Id.* at 21-24.
[42] *Id.* at 22.

CEVA Freight for their negligence in hiring and instructing Coastal with respect to the Michelin shipment.[43]

Count 6 is the Goodyear Plaintiffs' request for a declaratory judgment against CEVA Singapore and Pyramid (1) finding that the terms and conditions of the negotiated rate agreement as they existed on August 31, 2021, apply to the Goodyear shipment and (2) declaring whether, and to what extent, any limitation of liability applies to these two defendants' liability for loss concerning, and damage to, the Goodyear shipment.[44]

The CEVA Defendants filed a motion to dismiss counts 1 (the Goodyear Plaintiffs' carrier liability claim); 3 and 9 (the Plaintiffs' bailment claims); 5 and 11 (the Plaintiffs' negligent hiring and instruction claims); and count 6 (the Goodyear Plaintiffs' declaratory relief claim).[45]  Coastal filed a motion to dismiss counts 4 and 10 (the Plaintiffs' bailment claims).

## II.     LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[43] *Id.* at 37-39.
[44] *Id.* at 24-25.
[45] R. Doc. 33.

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*.  The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).  Motions to dismiss are disfavored and rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.  The CEVA Defendants' Motion to Dismiss**

The CEVA Defendants seek dismissal of counts 1, 3, 5, 6, 9, and 11 of the amended complaint.[46]

---

[46] R. Doc. 33.

### 1.   **Count 1 – Carrier Liability**

As to count 1, the Goodyear Plaintiffs' carrier liability claim against CEVA Singapore and Pyramid, the CEVA Defendants argue that the Goodyear Plaintiffs improperly rely on unsigned proposals, specifically the customer proposal for ocean charter services and the negotiated rate agreement.[47]   To support this argument, the CEVA Defendants point to a provision of the negotiated rate agreement stating that it must be signed to be effective.[48]   The CEVA Defendants also argue that the email communication attached to the amended complaint may pose a statute-of-frauds issue under Texas law because it is too vague.[49]

In opposition, the Goodyear Plaintiffs argue that it is immaterial that the negotiated rate agreement is unsigned because they seek to enforce the August 31, 2021 email agreement, which incorporates the two unsigned agreements to provide the terms and conditions of the email agreement.[50]   Thus, say the Goodyear Plaintiffs, they are not seeking to enforce the unfinalized, global, and long-term negotiated rate agreement.[51]   The Goodyear Plaintiffs maintain that whether the email exchange actually evidences a meeting of the minds necessary to form a contract is a fact issue that will be developed through discovery.[52]   Further, the Goodyear Plaintiffs argue that there is no statute-of-frauds issue under Texas law because the contract was performed within a year of its formation.[53]

The alleged email agreement at issue is a maritime contract because its primary objective is to accomplish the transportation of goods by sea from Indonesia and Thailand to New Orleans. *Norfolk So. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004).  "As a general rule, admiralty law applies to

---

[47] R. Doc. 33-1 at 6, 8-9
[48] *Id.* at 8-9.
[49] *Id.* at 9.
[50] R. Doc. 38 at 11-15.
[51] *Id.*
[52] *Id.*
[53] *Id.* at 15-16.

all maritime contracts."  1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5:1 (6th ed. 2018) (citing *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997)). "The general maritime law is the product of the maritime jurisprudence of the federal courts" and "'is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules'" that are "'[d]rawn from state and federal sources.'"  *Id.* (quoting *E. River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 864-65 (1986)).  Applying federal law in the context of maritime contracts "'includes looking to principles of general contract law that can be found in treatises or restatements of the law.'"  *Int'l Marine, L.L.C. v. FDT, L.L.C.*, 619 F. App'x 342, 349 (5th Cir. 2015) (quoting *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014)) (internal quotation marks omitted).

A contract is formed when at least two parties with the legal capacity to contract manifest mutual assent to a bargained-for exchange of consideration.  RESTATEMENT (SECOND) OF CONTRACTS §§ 9, 12, 18 & 71 (AM. L. INST. 1981).  "[T]he manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties."  *Id.* § 22(1). "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer," which can include acceptance by performance that operates as a return promise.  *Id.* § 50.  However, "[a] manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined."  *Id.* § 22(2).  Assent may be given in writing, orally, by the performance of other acts, or by the failure to act.  *Id.* § 19(1).  A party's conduct is effective as a manifestation of his assent if "he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* § 19(2).

Here, the Goodyear Plaintiffs have sufficiently alleged that they entered into a contract by email with the relevant CEVA Defendants for the carriage of the bales of rubber from Indonesia and Thailand to New Orleans.  Whether the parties actually formed a contract, what the terms of that contract are, and whether there is a statute-of-frauds issue will not be addressed by the Court at this juncture.  Instead, resolution of these issues must await discovery and potentially further motion practice.  At this stage, accepting the allegations in the amended complaint as true, the Goodyear Plaintiffs have alleged sufficient facts to state a claim that a contract was formed and breached.

### 2.   Counts 3 and 9 – Bailment

The CEVA Defendants argue that counts 3 and 9, Plaintiffs' bailment claims against the CEVA Defendants, are displaced by COGSA and do not state bailment claims because they do not allege that the CEVA Defendants had exclusive possession of the cargo.[54]

In opposition, Plaintiffs argue that their bailment claims against the CEVA Defendants are not displaced by COGSA because the bailment claims relate to post-discharge cargo damage, and the CEVA Defendants have taken the position that they were no longer acting as COGSA carriers once the cargo was offloaded from the vessel.[55]  According to Plaintiffs, because the CEVA Defendants agreed in the appliable contracts to provide 15 days of free storage at the port of New Orleans and they contend they were no longer COGSA carriers after discharge, the CEVA Defendants became bailees of the cargo once it was offloaded from the vessel.[56]  Plaintiffs further argue that they did not have to allege that the CEVA Defendants had exclusive possession of the cargo because they subcontracted to Coastal their obligation to store the cargo in New Orleans.[57]

---

[54] R. Doc. 33-1 at 6, 9-11.
[55] R. Doc. 38 at 16.
[56] *Id.* at 9.
[57] *Id.* at 17-19.

COGSA permits ocean carriers to limit their liability for "packages" damaged in shipping to $500 per package unless the shipper declares a different value in the bill of lading.  46 U.S.C. § 30701 note (previously codified at 46 U.S.C. app. § 1304(5)).  Ordinarily, COGSA applies from the time a package is loaded onto a vessel to when it is offloaded at the port, but parties can contract to expand the protection beyond the "hook-to-hook" period and to other parties, including stevedores.  *Granite State Ins. Co. v. Caucer Syndicate 1084 at Lloyd's*, 2020 WL 8678020, at *5 (S.D. Tex. July 14, 2020) (citing 46 U.S.C. app. § 1307; *Kirby*, 543 U.S. at 27-29).  Courts generally agree that COGSA preempts other causes of action ***where it applies***.  *Id.* at *6.

Here, Plaintiffs agree that COGSA applies for the period that the cargo was aboard the vessel.  The parties, however, fundamentally disagree about when the CEVA Defendants' responsibility for the cargo as a common carrier ended.  As stated by Plaintiffs, the bailment claim against the CEVA Defendants is pleaded in the alternative to the carrier liability claim because of the litigation position espoused by those defendants.  Plaintiffs contend that, if the CEVA Defendants' carrier liability terminated at the port, they then became liable as bailees for hire, which also makes them liable for the actions of anyone they entrusted with the goods, such as Coastal.  *See David Crystal, Inc. v. Cunard S.S. Co.*, 223 F. Supp. 273, 282 (S.D.N.Y. 1963) (observing that "where, by the terms of the bill of lading, the contract of carriage terminates on discharge of the cargo from the ship, its liability changes from that of a common carrier to that of a warehouseman … and the rule is well settled that bailee for hire is responsible for the proper care, not only by himself but by anyone to whom he entrusts it and it makes no difference whether that other is an independent contractor or not") (quotations and citations omitted), *aff'd*, 339 F.2d 395 (2d Cir. 1964).  Again, accepting as true Plaintiffs' allegations made in the alternative in the amended complaint, Plaintiffs have stated bailment claims against the CEVA Defendants that are

not preempted by COGSA.  If discovery shows otherwise, the CEVA Defendants are not foreclosed from additional motion practice.

### 3. Counts 5 and 11 – Negligent Hiring and Instruction

The CEVA Defendants argue that counts 5 and 11, Plaintiffs' negligent hiring and instruction claims against the CEVA Defendants, fail to allege a factual basis reflecting a duty of care on the part of the CEVA Defendants in selecting, hiring, and instructing Coastal that does not arise from a contract.[58]  The CEVA Defendants further argue that Plaintiffs fails to show that they knew or should have known that Coastal was incompetent or irresponsible.[59]

In opposition, Plaintiffs argue that they have alleged sufficient facts to state a claim against the CEVA Defendants for negligently hiring and instructing Coastal because their allegations, pleaded in the alternative, plainly state that the CEVA Defendants "'had a duty of care to Plaintiffs to make sure that [Coastal] had the requisite knowledge, capabilities and facilities to safely receive, store, and care for the shipment, and a duty to instruct [Coastal] as to the proper method of caring for and storing processed natural rubber,'" and that the CEVA Defendants breached these duties.[60] Plaintiffs also argue that they allege that the CEVA Defendants "'knew or should have known that [Coastal] did not have the proper knowledge and expertise to care for and store the rubber shipment, in that the CEVA Defendants did not confirm with [Coastal] that it had the requisite knowledge, capabilities, and facilities to receive, store, care for and receive the processed natural rubber (including covered warehouse facilities to prevent rain water from damaging the processed natural rubber), nor did the CEVA Defendants inform [Coastal] of the proper method of storing and caring for the processed natural rubber.'"[61]

---

[58] R. Doc. 33-1 at 6, 11-12.
[59] *Id.* at 12.
[60] R. Doc. 38 at 10, 20-21 (quoting R. Doc. 28 at 22) (alterations omitted).
[61] *Id.* at 21-22 (quoting R. Doc. 28 at 23) (alterations and emphasis omitted).

At this motion-to-dismiss stage of the case, this pleading is enough, and the Court finds that Plaintiffs have sufficiently alleged claims for negligent hiring and instruction against the CEVA Defendants.

### 4.  Count 6 – Declaratory Relief

The CEVA Defendants argue that the Goodyear Plaintiffs' declaratory relief claim should be dismissed because the negotiated rate agreement is unsigned and the request for a declaration as to the applicability of that document is duplicative and unnecessary in that the issue is raised in count 1, which will resolve whether the agreement applies.[62] The CEVA Defendants further argue that the Goodyear Plaintiffs have not alleged that they will suffer further injury.[63]

In opposition, the Goodyear Plaintiffs respond that the declaratory relief claim is not duplicative of count 1 because count 6 focuses on the applicability of the terms of the negotiated rate agreement and any applicable limitation of liability.[64] The Goodyear Plaintiffs also argue that early resolution of the limitation-of-liability issue could aid settlement or narrow the issues for trial.[65]

Considering the complaint as a whole, and count 6 in particular, the Court finds that the declaratory judgment claim is sufficiently pleaded and there is no reason to dismiss it at this time. The Court will only consider the merits of the claim if, after discovery, it is determined that the claim is not duplicative.

### C.  Coastal's Motion to Dismiss

Coastal argues that Plaintiffs' bailment claims against it (counts 4 and 10) should be dismissed because the bills of lading include a Himalaya Clause that extends certain protections

---

[62] R. Doc. 33-1 at 12-13.
[63] *Id.* at 13.
[64] R. Doc. 38 at 22.
[65] *Id.*

15

to stevedores and terminal operators, including specifically that such "servants" shall not have any liability to the cargo owner.[66]  Coastal also argues that Plaintiffs have not stated bailment claims against it because they do not allege that Coastal had exclusive possession and control of the cargo, that Plaintiffs and Coastal had a bailment contract, or that Coastal received the cargo in good condition.[67]

In opposition, Plaintiffs argue that the bailment claims against Coastal are pleaded in the alternative because the CEVA Defendants disclaim any liability for the cargo after discharge.[68] As stated by Plaintiffs: "The CEVA Defendants' … position has forced Plaintiff to bring Coastal into the case and allege its liability in bailment to meet the … scenario that the contractual responsibility of the CEVA Defendants as carriers terminated upon discharge of the rubber shipments from the vessel, leaving Coastal as bailee of the rubber shipments."[69]  Plaintiffs insist that whether the terms and conditions of the bills of landing, including the Himalaya Clause, apply to Coastal are factual issues that cannot be resolved on a motion to dismiss because: (1) Plaintiffs do not know which CEVA entity hired Coastal; (2) Plaintiffs claim that their rights against Coastal are governed by the terms and conditions of the August 31, 2021 email contract, which may supersede the bills of lading; (3) Plaintiffs do not know if Pyramid (the issuer of the bills of lading) hired Coastal; and (4) the CEVA Defendants' contractual liability as carriers (including under the bills of lading) may have ended upon discharge of the cargo, if the CEVA Defendants' position is accepted.[70]  Plaintiffs argue that they indeed allege that Coastal had exclusive control of the cargo by pleading that the CEVA Defendants hired Coastal as their agent for bailment.[71]  Further,

---

[66] R. Doc. 34-1 at 5, 10-12.
[67] *Id.* at 5, 13-15.
[68] R. Doc. 37 at 8.
[69] *Id.*
[70] *Id.*
[71] *Id.* at 13-16.

Plaintiffs urge that they do not need to establish a direct bailment contract with Coastal because the CEVA Defendants hired Coastal as their agent to discharge the storage obligation.[72]   Finally, Plaintiffs argue that they do not have to allege the condition of the cargo when Coastal received it, only that it was damaged while in Coastal's exclusive control, which Plaintiffs purport to have done.[73]

Coastal replies that the bills of lading must continue to apply after discharge, which exculpates it from lability.[74]   Coastal further argues that Plaintiffs allegations of serial possession preclude the bailment claims against Coastal because it is unclear who had possession when and what the condition of the cargo was at each point.[75]

A bailment is the delivery of goods or property, "by one person to another, in trust for the execution of a special object upon or in relation to such goods, beneficial to the bailor or bailee or both," and upon performing the trust, either redelivery of the goods to the bailee or other disposition in conformity with the purpose of the trust.  *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir. 1983).  Generally, a bailee must have exclusive possession of the property, and its duties are limited when the owner, its agent, or its employee has access to it.  *Id.*  "In order to establish a prima facie case of a bailment and raise a presumption of defendant's negligence, a plaintiff must prove (1) an agreement, express or implied, (2) delivery of the property in good condition, and (3) its nonreturn or redelivery in a damaged condition."  *In re B & J Inc.*, 2023 WL 3297157, at *13 (W.D. La. May 5, 2023) (citing *Nat'l Liab. & Fire Ins. Co. v. R&R Marine, Inc.*, 756 F.3d 825, 830 (5th Cir. 2014)).

---

[72] *Id.* at 16-17.
[73] *Id.* at 17-20.
[74] R. Doc. 41 at 2-7.
[75] *Id.* at 7-9.

Here, Plaintiffs have alleged bailment claims against Coastal in the alternative to all of their claims against the CEVA Defendants.  Coastal's arguments regarding the bills of lading cannot be resolved on a motion to dismiss because they involve factual disputes regarding the applicability of the bills of lading and other contracts, and their interaction.  Moreover, Plaintiffs have alleged enough facts to establish for purposes of a motion to dismiss that Coastal agreed to, and did, receive the property in some condition, had sufficient possession of it, and that it was redelivered to Plaintiffs in a damaged condition.  When and how the rubber cargo was damaged will be developed through discovery.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the CEVA Defendants' motion to dismiss (R. Doc. 33) is DENIED.

IT IS FURTHER ORDERED that Coastal's motion to dismiss (R. Doc. 34) is also DENIED.

New Orleans, Louisiana, this 28th day of June, 2023.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE