UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, ET AL. | * | CIVIL ACTION |
| | * | NO. 22-4561 |
| VERSUS | | |
| | * | SECTION "M" (2) |
| CEVA LOGISTICS SINGAPORE, LTD., ET AL. | | |

## ORDER AND REASONS

Pending before me are three motions: (1) Motion for Protective Order filed by Defendants CEVA Logistics Singapore Pte Ltd ("CEVA Singapore"), CEVA Freight LLC ("CEVA Freight"), Pyramid Lines Singapore Pte Ltd ("Pyramid Lines"), and CEVA Logistics (Thailand) Ltd ("CEVA Logistics Thailand") (collectively, the "CEVA Defendants"); (2) Motion to Compel filed by The Goodyear Tire & Rubber Company ("Goodyear") and Michelin North America, Inc. ("Michelin"); and (3) Motion to Compel Documents and Further Discovery filed by the CEVA Defendants. ECF Nos. 108, 111, 118. The parties filed Opposition and Reply Memoranda. ECF Nos. 114, 116, 124, 125, 128, 129, 130.

At the parties' requests, the Court heard oral arguments on Wednesday, October 9, 2024. After hearing oral argument and taking the matter under submission, and having considered the record, the oral and written arguments of counsel, and the applicable law, the Court GRANTS IN PART AND DENIES IN PART each motion for the reasons stated herein.

## I.    BACKGROUND

This case arises from alleged water damage to two shipments of processed natural rubber. Plaintiffs (The Goodyear Tire & Rubber Company, Goodyear Orient Company (Private) Limited, Navigators Insurance Company, Inc., Navigators Management Company, Société des Matières Premières Tropicales PTE, Ltd, Michelin North America, Inc., HDI Global SE, AIG Europe SA

and Chubb European Group SE) allege they delivered 71,100 bales of processed natural rubber in Indonesia and 37,440 bales in Thailand, which constituted Goodyear's shipment, and another 15,552 bales in Indonesia, which constituted Michelin's shipment, to CEVA Singapore, CEVA Freight, CEVA Logistics Thailand, CEVA Logistics Indonesia and Pyramid Lines in good order and condition, but the cargo arrived in New Orleans wet and damaged, both from damage during ocean transit before discharge and from damage after unloading when stored outdoors and uncovered at the Port of New Orleans.  ECF No. 80 at 5-7.  Plaintiffs allege that the CEVA Defendants acted as common or private carriers for hire, vessel charterers, and/or transportation intermediaries for the shipments from Indonesia to New Orleans and chartered the INTAN DAYA 7 (as the feeder vessel) and AMBER STAR (as the mother vessel) to transport the cargo to New Orleans.  *Id.* at 3-6.  The CEVA Defendants allegedly hired Defendant Coastal Cargo Company, LLC ("Coastal Cargo"), a stevedore and terminal operator, to receive and store the shipments upon its arrival in New Orleans.  *Id.* at 5.

Goodyear Orient Company (Private) Limited and Société des Matières Premières Tropicales PTE, Ltd contracted with CEVA Singapore and CEVA Logistics Thailand to transport the Goodyear and Michelin rubber shipments.  ECF No. 111-6 at 12, 30.  Plaintiffs contend other CEVA-affiliated entities, whether party to the action or not, acted as CEVA Singapore and CEVA Logistics Thailand's agents to perform services in connection with the shipments.  ECF No. 111-1 at 5.  The customer proposals indicate acceptance "for and on behalf of . . . CEVA Logistics Thailand & CEVA Logistics Indonesia."  ECF No. 111-6 at 12, 30.  Pyramid Lines served as the carrier for the bills of ladings for the rubber shipments issued by CEVA Logistics with PT. CEVA Freight Indonesia signing for the Goodyear shipment (ECF Nos. 80-4 at 1-19; 80-7 at 1-9), in accordance with the proposals (ECF No. 111-6 at 12-13, 30-31).  CEVA Freight (Thailand) Ltd.

2

("CEVA Freight Thailand") commissioned two cargo condition surveys, one conducted pre-discharge of the rubber from the feeder vessel and the other pre-loading of the mother vessel. *Id.* at 32; ECF No. 111-7 at 1. CEVA Logistics in Houston hired a surveyor to conduct the discharge survey from the mother vessel in New Orleans. ECF No. 111-8 at 1. CEVA Freight received the rubber shipments. *Id.*

## II.    **THE MOTIONS**

### A.    **Protective Order**

Four CEVA Defendants (CEVA Singapore, CEVA Freight, Pyramid Lines and CEVA Logistics Thailand) have been served and appeared in this case and two other CEVA Defendants (CEVA Logistics Indonesia and CEVA Freight Thailand) have been named but have neither been served nor appeared. ECF No. 108-1 at 2-3. In the course of discovery, Plaintiffs issued Rule 30(b)(6) deposition notices to the CEVA Defendants, which includes a broad definition of "CEVA Affiliate(s)" that encompasses unserved and unnamed related entities. *Id.* at 2 n.2, 3-4. The CEVA Defendants argue that this effort circumvents the requirements of Rule 4 (service) and Rule 30 (depositions) by seeking to elicit admissions and information about an unserved party that is outside of the personal knowledge of the deponent. *Id.* at 2-3. Arguing that these entities are all separate and distinct, the CEVA Defendants seek a protective order limiting the definition of "CEVA Affiliate(s)" and ruling that (a) the Rule 30(b)(6) testimony of each CEVA Defendant will not bind any other CEVA party nor be deemed a corporate representative of any other CEVA Defendant and (b) each CEVA Defendant need not testify as to knowledge or information of other CEVA entities. *Id.* at 10.

In Opposition, Plaintiffs deny that they are seeking to bind any other CEVA entity and further deny any attempt to deem a CEVA Defendant designee as a representative of any other

CEVA entity.  ECF No. 114 at 2, 10-17.  Rather, Plaintiffs argue they simply seek testimony from the CEVA Defendants in accordance with the Rule 30(b)(6)'s "reasonably available" standard.  *Id.* at 2-3, 10-14.  Plaintiffs argue that they dealt with CEVA Singapore but contracted not only with that entity but also CEVA Logistics Thailand while yet other CEVA entities acted as agents of the contracting CEVA parties.  *Id.* at 3-6.  Coastal Cargo adopts Plaintiffs' arguments and argues that the CEVA Defendants' duty to prepare Rule 30(b)(6) witnesses with information reasonably available extends to information in the custody of nonparty CEVA entities, particularly considering that the CEVA Defendants are part of a global business entity and acted jointly. ECF No. 116 at 1-2, 4-5.

In Reply, the CEVA Defendants distinguish the cases cited by Plaintiffs and argue that Rule 34 "control" differs from Rule 30(b)(6) "control."  ECF No. 129 at 4-7.  The CEVA Defendants cite two unreported cases from this district granting protective orders regarding a Rule 30(b)(6) notice's use of the term "affiliate."  *Id.* at 7-8.  The CEVA Defendants also raise arguments relating to their severance motion currently set before Judge Ashe.  *Id.* at 8-10.

### B.  <u>Plaintiffs' Motion to Compel</u>

Plaintiffs seek to require the CEVA Defendants to produce documents in the custody or control of other CEVA entities whom Plaintiffs contend acted as agents for the CEVA Defendants and because the entities are part of a corporate family that files consolidated financial reports and shares logos, emails and websites.  ECF No. 111-1 at 14-18.  Plaintiffs also reiterate their arguments raised in Opposition to the Motion for Protective Order regarding Rule 30(b)(6).  *Id.* at

18-21.  Plaintiffs also seek supplemental responses to their Requests for Admission, particularly with regard to document authenticity, and their Interrogatories and costs. *Id.* at 22-24.

In Opposition, the CEVA Defendants argue Plaintiffs have not complied with their meet and confer obligations and it produced 3,032 responsive documents, including documents from related non-party entities, whereas Plaintiffs have not complied with their discovery obligations. ECF No. 124 at 2-3.  The CEVA Defendants distinguish the cited cases and reiterate their arguments, repeating their request for a protective order. *Id.* at 4-6, 7-13.

In Reply, Plaintiffs object to the CEVA Defendants' efforts to avoid the issues raised and instead re-argue their own motions.  ECF No. 130 at 2.  Plaintiffs also reiterate their agency arguments and note the CEVA Defendants have selectively cherry-picked documents to produce without confirming that the production includes *all* relevant documents. *Id.* at 3-6.  Plaintiffs also argue that the Rule 37 conference need not be handled by counsel of record. *Id.* at 8.

### C. <u>Defendants' Motion to Compel</u>

The CEVA Defendants move to compel Plaintiffs to provide supplemental responses based on information and documents within the custody or control of their non-party affiliates that are reasonably available to them, as well as policies, procedures, and manuals concerning packaging and transportation of natural rubber.  ECF No. 118.  The CEVA Defendants argue that a central issue of discovery is Plaintiffs' packaging requirements and failure to comply with same.  ECF No. 118-1 at 2.  They argue that Michelin produced a November 2022 document rather than the document governing the 2021 transport at issue, which was highly redacted without a specified basis for redaction nor was same identified on a privilege log. *Id.* at 3.  But, the CEVA Defendants argue they found an email from Michelin providing its 2021 packaging information and reflects that Michelin redacted highly relevant information establishing that Michelin failed to comply with

its own packing policies.  *Id.* at 3-4.  They similarly argue that Goodyear failed to comply with its owns policies, and neither Michelin nor Goodyear produced relevant documents in the possession of affiliates despite the documents being under Michelin and Goodyear's control.  *Id.* at 3-5, 6-9, 15-16.  The CEVA Defendants seek, for the three-year period before the voyage, Plaintiffs' shipping and packaging policies, quality assurance and storage policies, and instructions for packaging, loading and transporting rubber, as well as costs.  *Id.* at 14, 17.

In Opposition, Plaintiffs argue that the CEVA Defendants' request for documents regarding other shipments are not relevant and fall outside the scope of discovery.  ECF No. 125 at 2-3, 10-11.  Plaintiffs argue that they have produced responsive information relating to the packaging and quality assurance policies for Goodyear and undertaken reasonable efforts to locate and produce the responsive information relating to same for Michelin, and the CEVA Defendants located a copy of the prior policy that Michelin could not locate.  *Id.* at 3-4.  Plaintiffs also argue that the CEVA Defendants seek to compel supplemental responses to items not addressed in a meet and confer.  *Id.* at 5, 10.

In Reply, the CEVA Defendants argue that they should not have to blindly accept Plaintiffs' redactions as an effort to protect competitive information rather than a "fraud upon the Court."  ECF No. 128 at 3-4.  The CEVA Defendants also attack Michelin's document production, noting that some emails between the parties were produced by CEVA but not produced by Michelin.  *Id.* at 4-5.  They also reiterate their argument that Plaintiffs are required to produce responsive documents under their control but in the possession of their affiliates.  *Id.* at 6-7.

III.    **APPLICABLE LAW**

### A.  **The Scope of Discovery**

Rule 26 of the Federal Rules of Civil Procedure authorizes parties to:

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[1]

Information need not be admissible into evidence to be discoverable.[2]  Rather, the information merely needs to be ***proportional*** and ***relevant*** to any claim or defense.[3]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional.  The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26 advisory committee's notes to 2015 amendment.  "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."  *Id.*

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[4]  At the discovery stage, relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[5]  Discovery should be allowed unless the party opposing discovery

---

[1] FED. R. CIV. P. 26(b)(1).
[2] *Id.*
[3] *Id.*
[4] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[5] *Id*. (brackets and citations omitted).

establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[6]  If relevance is in doubt, a court should allow discovery.[7]

### B.  Duties in Responding to Interrogatories and Requests for Production

Both Rules 33 and 34 require a party to serve responses within thirty days of service, absent court order or stipulation.[8]  A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.[9]  "Discovery by interrogatory requires candor in responding. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information."[10]

Although a party responding to interrogatories is not required to make an extensive investigation in responding to an interrogatory, it must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[11]  The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[12]  Where an interrogatory answer "'as a whole discloses a

---

[6] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (Morgan, J.) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).

[7] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc*., 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[8] FED. R. CIV. P. 33(b)(2); 34(b)(2)(A).

[9] *Lopez v. Don Herring Ltd*., 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).

[10] *Dollar v. Long Mfg., N.C., Inc*., 561 F.2d 613, 616 (5th Cir. 1977).

[11] *Lopez* at 579 (citing 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2174 (3d ed. 2013)).

[12] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp*., 483 F.2d 300, 307–08 (5th Cir. 1973)).

conscientious endeavor to understand the question and to answer fully that question,' a party's obligation under Rule 33 is satisfied."[13]

Likewise, a party must provide full and complete responses to requests for production within thirty days after being served same unless otherwise stipulated or ordered.[14]  For each request, the respondent must either state that the inspection or production will be permitted or state with specificity the grounds for objection, including the reasons.[15]  Any objection "must state whether any responsive materials are being withheld on the basis of that objection," and if the responding party objects, it must specify the objectionable part and permit inspection of the rest.[16]  Objections interposed without also clearly indicating whether any document or information is being withheld are improper.[17]  All responses must clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[18]  The production must occur "no later than the time for inspection specified in the request or another reasonable time specified in the response."[19]  FED. R. CIV. P. 34(b)(2)(b).

Although Rule 26(e) imposes an obligation to supplement responses,[20] that provision does not provide "an extension of the deadline by which a party must deliver" its information.[21]  Rather,

---

[13] *Id.* (brackets omitted) (quoting *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. 11–542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2177 (3d ed. 2013))).

[14] FED. R. CIV. P. 34(b)(2)(A).

[15] *Id.* 34(b)(2)(B).

[16] *Id.* 34(b)(2)(C).

[17] *Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, No. 13-2809, 2015 WL 269051, at *4 (E.D. La. Jan. 21, 2015).

[18] *Id.*

[19] A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.  *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Est. of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

[20] *Berenson v. Adm'rs of Tulane Univ. Educ. Fund*, No. 17-329, 2017 WL 6372831, at *3 (E.D. La. Dec. 13, 2017); *see also Moore v. BASF Corp.*, No. 11-1001, 2012 WL 12990571, at *2 (E.D. La. May 2, 2012).

[21] *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *see also Van Baelen v. Sabine Transp. Co.*, No. 00-2155, 2001 WL 474273, at *2 (E.D. La. May 2, 2001) (Clement, J.) (noting that Rule 26(e)'s duty to supplement does not enable a party to circumvent Rule 26(a)'s deadlines or a court's scheduling order).

the basic purpose of this rule is to prevent prejudice and surprise.[22]

### 1. Possession, Custody or Control

A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession but also documents that are within the party's constructive possession, custody or control. Fed. R. Civ. P. 26(a)(1)(A)(ii); 34(a)(1). The Fifth Circuit has recognized a distinction between "access" and "possession, custody, or control."[23] A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.[24] Thus, documents owned or possessed by agents, attorneys, hired consultants and other third parties hired by a party that the party can reasonably obtain upon request fall within that party's custody or control.[25] "Control" over a corporate affiliate's documents is not equivalent to veil piercing.[26]

The burden is on the party seeking discovery to show that the other party has control over the material sought.[27] To establish control over documents in the possession of a non-party, the movant must typically show that there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession."[28] Factors to consider in determining whether a

---

[22] *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85-86 (5th Cir. 1994).

[23] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004).

[24] *Becnel*, 2018 WL 691649, at *3 (citations omitted); *Est. of Monroe*, 2004 WL 737463, at *10 (citation omitted).

[25] *Becnel*, 2018 WL 691649, at *3 (collecting cases) ("'[C]ontrol' . . . extends to materials which the party to whom the request is made has the legal right to obtain . . ., even though in fact it has no copy.") (brackets in original); *Dillard Univ. v. Lexington Ins. Co.*, No. 06-4138, 2008 WL 11350306, at *1 (E.D. La. Mar. 27, 2008) (collecting cases) (holding materials provided by the party to its hired consultants may be within that party's possession, custody, or control).

[26] *Anz Advanced Techs. LLC v. Bush Hog, LLC*, No. 09-00228, 2011 WL 814663, at *9 (S.D. Ala. Jan. 26, 2011) (quoting *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998)), *R.&R. adopted*, 2011 WL 814612 (S.D. Ala. Mar. 3, 2011).

[27] *S. Filter Media, LLC v. Halter*, No. 13-116, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014) (citing *Est. of Monroe*, 2004 WL 737463, at *10); *Washington-St. Tammany Elec. Coop., Inc. v. La. Generating, L.L.C.*, No. 17-405, 2019 WL 1804849, at *7 (M.D. La. Apr. 24, 2019) (citation omitted).

[28] *S. Filter Media, LLC*, 2014 WL 4278788, at *5 (citations omitted).

party has "control" of materials include whether the party could secure the materials from the non-party to meet its own business needs or whether, by virtue of stock ownership or otherwise, the party effectively controls the other entity, specifically considering commonality of ownership, exchange or intermingling of directors, officers or employees of the two corporations, exchange of documents between the corporations in the ordinary course of business, any benefit or involvement of the nonparty corporation in the transaction, and involvement of the non-party corporation in the litigation.[29]  Thus, courts regularly order corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations.[30]

### 2.  Objections

The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[31] and courts have long interpreted the rules to prohibit general, boilerplate objections.[32]  Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[33]  Proper objections must be specific and correspond to specific discovery

---

[29] *Id.* (citations omitted); *Benson v. Rosenthal*, No. 15-782, 2016 WL 1046126, at *4 (E.D. La. Mar. 16, 2016) (citation omitted) (noting that, "under some circumstances courts interpret the control concept to go beyond whether the litigant has a legal right to obtain materials and focus on practical ability to obtain them").

[30] *See, e.g.*, *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 09-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (noting that the focus is the relationship between entities, not the particular corporate form).

[31] 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2173 (3d ed. 2021).

[32] *See, e.g.*, *Chevron*, 2015 WL 269051, at *3 (citation omitted) (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request"); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (citations omitted) (noting simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive," is inadequate to "voice a successful objection").

[33] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 20-42, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (citation omitted) (providing examples for boiler plate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case").  Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request.  *Amazing Ins., Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).

requests.[34]  Further, it is improper for parties responding to discovery to provide responses with the caveat that they are given "subject to and without waiving" objections.  Federal courts have repeatedly recognized that such language is improper and inconsistent with the Federal Rules.[35]

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.[36]  The party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[37]  Any objection must clearly state how the information sought is not relevant to any claim or defense or how the request is overbroad, burdensome or oppressive.[38]

When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a

---

[34] *Dickey v. Apache Indus. Servs., Inc.*, No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("Defendants initially gave general objections applicable to all of Plaintiff's discovery requests.  But critically, after providing their general objections, Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections.").

[35] *Heller v. City of Dall.*, 303 F.R.D. 466, 486-87 (N.D. Tex. 2014) (citation omitted) ("The practice of asserting objections and then answering 'subject to' and/or 'without waiving' the objections–like the practice of including a stand-alone list of general or blanket objections that precede any responses to specific discovery requests–may have developed as a reflexive habit . . . [, but the practice] 'manifestly confuses (at best) and mislead[s] (at worse)[] and has no basis at all in the Federal Rules of Civil Procedure.'").

[36] *Lopez*, 327 F.R.D. at 580 (citation omitted).

[37] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (citation omitted).

[38] *Chevron*, 2015 WL 269051 at *3 (citation omitted) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.").

request must specify the part and permit inspection of the rest."[39]  Objections interposed without also indicating whether any document or information is being withheld are improper.[40]  Responses must also clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[41]

### 3.  Privilege Objections

A party withholding information based on privilege or work product "**must** (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim."  FED. R. CIV. P. 26(b)(5)(A) (emphasis added).  The use of the word "must" indicates that production of a privilege log, including the detail specified by Rule 26(b)(5)(A)(i) and (ii), is mandatory.  The "privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim."[42]  It "should not only identify the date, the author, and all recipients of each document listed therein, but should also 'describe the document's subject matter, purpose for its production, and specific explanation of why the

---

[39] FED. R. CIV. P. 34(b)(2)(C); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 13-2110, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

[40] *See Chevron*, 2015 WL 269051 at *4 (holding that objections fall woefully short of objecting party's burden when party objected to documents and information protected by privilege but did not describe whether any documents were withheld or the nature of withheld documents).

[41] *Id.* (citation omitted) ("Objections that fail to provide an appropriate factual basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects.").

[42] *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); and citing *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("When a party relies on a privilege log to assert these privileges, the log must 'as to each document . . . set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'") (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993))).

document is privileged or immune from discovery.'"[43]   The party asserting privilege bears the burden of proof sufficient to substantiate its claims.[44]

When faced with an inadequate privilege log, the court may: (1) permit the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) conduct an *in camera* inspection of the withheld documents; or (4) conduct an *in camera* inspection of a select sample of the withheld documents.[45]   Most courts take a flexible approach, particularly when there is an insufficient privilege log but no evidence of bad faith, finding waiver only for flagrant or willful failures.[46]   The Court should not undertake a review of numerous withheld documents without any meaningful justification[47] nor should it conduct an *in camera* review merely because a party requests it.[48]   Only when there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege must the court utilize its discretion to determine whether *in camera* review is appropriate under the circumstances presented.[49]

---

[43] *See Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. 2008) (quoting *Jones v. Hamilton Cnty. Sheriff's Dep't*, No. 02-808, 2003 WL 21383332, at *4 (S.D. Ind. 2003); and citing *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995)).

[44] *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)); *see Hodges v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

[45] *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, No. 10-684, 2014 WL 12660120, at *4 (M.D. La. Jan. 14, 2014) (quoting *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307-08 (D.D.C. 2009)).

[46] *Id.* (citing *United States v. Brit. Am. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 890-91 (D.C. Cir. 2004); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 381-82 (S.D. Ind. 2009) (foot-dragging and failure to comply with court's order showed willfulness and bad faith); *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009)).

[47] *See United States v. Zolin*, 491 U.S. 554, 571 (1989) ("[W]e cannot ignore the burdens *in camera* review places upon the district courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties."); *Smith v. Shelter Mut. Ins. Co.*, No. 15-357, 2018 WL 1278429, at *2 (M.D. La. Mar. 12, 2018) (refusing to review 139 withheld documents as it "would constitute a great and unnecessary expenditure of judicial resources").

[48] *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 21 (N.D. Tex. 2021) (citations omitted).

[49] *Id.* at 21 (quoting *Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, No. 13-4136, 2015 WL 12916409, at *1 (N.D. Tex. Feb. 6, 2015); *accord BDO USA, L.L.P.*, 876 F.3d at 697 n.4 ("Given the serious nature of Bower's allegations through her affidavit and the lack of a countering affidavit from the party claiming privilege, we note that in camera review will likely be necessary."); *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011)).

C. **Requests for Admission**

Rule 36 authorizes a party to request another party "to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)" relating to facts, application of law to facts, or opinions about either. FED. R. CIV. P. 36(a)(1)(A). This is not principally a discovery device and is not a substitute for the discovery process used to uncover evidence.[50] "In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party."[51] Requests for admissions allow litigants to winnow down issues before trial and focus their energy and resources on disputed matters.[52]

Rule 36 instructs litigants how to answer and object to requests for admission:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

FED. R. CIV. P. 36(a)(4). The ground for objecting to a request must be stated. *Id.* at 36(a)(5). The denial of a request for admission "as written" without further explanation is evasive and non-compliant with Rule 36.[53] When a responding party has semantic objections to how the requests for admission are drafted and its qualified denials are partial in nature, the party must identify, in good faith, the extent to which it admits the requests for admission.[54]

---

[50] *In re Katrina Canal Breaches*, No. 05-4182, 2007 WL 1852184, at *2 (E.D. La. June 27, 2007) (citations omitted).
[51] *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).
[52] *Katrina Canal Breaches*, 2007 WL 1852184, at *1 (quoting *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001)).
[53] *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc*., No. 12–2071, 2014 WL 295053, at *4 (E.D. La. Jan. 27, 2014).
[54] *Janko v. Fresh Mkt., Inc*., No. 13-648, 2015 WL 4714928, at *4 (M.D. La. Aug. 5, 2015) (citations omitted).

Rule 37 does not provide for a motion to compel answers to Rule 36 requests for admission nor does it contemplate a motion to deem requests admitted.[55]  Instead, the requesting party may file a motion to determine the sufficiency of an answer or objection to its requests for admission. FED. R. CIV. P. 36(a)(6).  Unless the court finds an objection justified, it must order that an answer be served, and if the court finds that an answer is noncompliant with the Federal Rules, it may order that the matter is admitted or direct the party to serve an amended answer.  *Id.*  The court may also award to the requesting party an award of expenses incurred by the party in proving the statement or authenticity of the document at issue if the responding party failed to properly respond to a Rule 36 request.  *Id*. at 37(c)(2).

### D.  Rule 30(b)(6) Depositions

"The Fifth Circuit has explained that the purpose of Rule 30(b)(6) is to streamline the discovery process by allowing for a specialized form of deposition."[56]  Rule 30(b)(6) gives the corporation being deposed "more control by allowing it to designate and prepare a witness to testify on [its] behalf."[57]  Further, it alleviates the opposing party from "having to play a frustrating game of blind man's bluff in naming the appropriate corporate officer to be deposed or from being bandied from pillar to post by deposition witnesses who disclaim personal knowledge on topics with which others in the corporation are familiar . . . ."[58]

### 1.  Requirements of Rule 30(b)(6)

The party seeking to depose an organization "must describe with reasonable particularity the matters for examination."[59]  In response, the entity must designate an agent or other person to

---

[55] *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 416 (N.D. Tex. 2021).
[56] *Johnson v. Big Lots Stores, Inc*., Nos. 04-3201, 05-6627, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008) (Vance, J.) (citing *Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993)).
[57] *Id.* (quoting *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996)).
[58] *Id.* (citing *Brazos River Auth. v. GE Ionics, Inc*., 469 F.3d 416, 432–33 (5th Cir. 2006)).
[59] FED. R. CIV. P. 30(b)(6).

testify on its behalf "about information known or reasonably available to the organization."[60]  This

Rule imposes upon the corporation a duty to present and prepare its designee as fully as possible

given the availability of requested subject matter from accessible sources, including from

documents and previous employees.[61]  As the Fifth Circuit has explained:

> [A corporate defendant] must make a conscientious good-faith endeavor to
> designate the persons having knowledge of the matters sought by [the party noticing
> the deposition] and to prepare those persons in order that they can answer fully,
> completely, unevasively, the questions posed . . . as to the relevant subject matters.
> [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters
> personally known to that designee or to matters in which that designee was
> personally involved.  The deponent must prepare the designee to the extent matters
> are reasonably available, whether from documents, past employees, or other
> sources.[62]

If the designated representative lacks knowledge of a specified topic, the corporation's appearance

is considered a nonappearance if it has failed to designate another available witness who possesses

the requisite knowledge about the relevant issue.[63]

In light of the burden placed on the corporate deponent by Rule 30(b)(6), the Rule

preliminarily imposes a duty to identify with reasonable particularity the specific categories or

topics for inquiry.[64]  This enables the corporate entity to fulfill its obligations to choose and prepare

a deponent: "For Rule 30(b)(6) to effectively function, the requesting party must take care to

designate, with painstaking specificity, the particular subject areas that are intended to be

questioned, and that are relevant to the issues in dispute."[65]  Otherwise, an overly broad Rule

---

[60] *Id.*

[61] *United Healthcare Servs., Inc. v. Next Health, LLC*, No. 17-00243, 2021 WL 9146632, at *2 (N.D. Tex. Oct. 13, 2021) (citations omitted) (holding that "the mere fact that [Defendant] no longer employs individuals with personal knowledge of relevant information does not relieve it from preparing its Rule 30(b)(6) designee to the extent that information is reasonably available").

[62] *Brazos River Auth.*, 469 F.3d at 433 (quotations and citations omitted).

[63] *Resolution Tr. Corp.*, 985 F.2d at 197.

[64] *Pauls v. Prudential Ins. Co. of Am.*, No. 16-2116, 2016 WL 6397564, at *4 (N.D. Tex. Oct. 28, 2016) (citing FED. R. CIV. P. 30(b)(6)).

[65] *Id.* (quoting *Hartford Fire Ins. Co. v. P & H Cattle Co.,* No. 05-2001, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009)); *see also Marti v. Schreiber/Cohen, LLC*, No. 18-40164, 2020 WL 3412748, at *3 (D. Mass. Mar. 17,

30(b)(6) notice subjects the noticed party to an impossible task because, if the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.[66]   Indeed, the effectiveness of Rule 30(b)(6) "bears heavily upon the parties' reciprocal obligations" to identify topics with particularity and prepare witnesses in good faith.[67]   In addition, "a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with reasonable particularity."[68]

## 2.   Scope of Examination

Courts generally recognize that Rule 30(b)(6) establishes the minimum about which the witness must be prepared to testify, not the maximum.[69]   The "reasonable particularity"

---

2020) (holding identifying topics as "all communications" does not meet the reasonable particularity requirement because it seeks testimony regarding unidentified and broadly classified communications).

[66] *Pauls*, 2016 WL 6397564, at *4 (citation omitted).

[67] *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008) (citations omitted); *see also Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, No. 11-048, 2013 WL 1343528, at *4 (D.R.I. Apr. 2, 2013) (citation omitted) (noting that "it is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything"); *Dealer Comput. Servs., Inc. v. Curry*, No. 12-3457, 2013 WL 499520, at *2 (S.D.N.Y. Feb. 7, 2013) ("A [30(b)(6)] deposition is not a quiz, nor is it the most practical way to obtain [all types of] information.").

[68] *Beverley v. N.Y.C. Health & Hosps. Corp.*, No. 18-08486, 2024 WL 2125402, at *6 (S.D.N.Y. May 13, 2024) (quoting *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-09371, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (internal citations omitted))

[69] *See, e.g.*, *Green v. Wing Enters., Inc.*, No. 14-01913, 2015 WL 506194, at *8 (D. Md. Feb. 5, 2015) (citing *K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, No. 08-243, 2010 WL 1568391, at *2 (E.D. Wash. Apr. 14, 2010) ("[D]istricts in the Ninth Circuit have concluded that once the witness satisfies the minimum standard for serving as a designated witness, the scope of the deposition is determined solely by relevance under Rule 26.") (internal quotation marks omitted); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y. 2009) ("[A] notice of deposition . . . constitutes the minimum, not the maximum, about which a deponent must be prepared to speak.") (internal quotations omitted); *Cabot Corp. v. Yamulla Enters., Inc.*, 194 F.R.D. 499, 500 (M.D. Pa. 2000) ("I do not read Rule 30(b)(6) as carving out a special limitation on the scope of discovery defined in Rule 26(b)(1)."); *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("Rule 30(b)(6) does not limit what can be asked at deposition."); *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-1124, 2019 WL 4141237, at *7 (S.D. Cal. Aug. 30, 2019); *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 563 (N.D. Cal. 2016) (holding that the 30(b)(6) notice establishes the minimum level of preparedness for the witness to be able to testify on the matter, and that a corporation must produce and prepare such persons who will provide complete answers on behalf of the corporation); *Rivas v. Greyhound Lines, Inc.*, No. 14-166, 2015 WL 13710124, at *6 (W.D. Tex. Apr. 27, 2015) (denying motion for protective order to preclude deposition question on relevant topic that went beyond scope of Rule 30(b)(6) notice), *amended on reconsideration in part*, 2016 WL 11164796 (W.D. Tex. Jan. 11, 2016); *Moriarty v. Am. Gen. Life. Ins. Co.*, No. 17-1709, 2019 WL 1559143, at *3 (S.D. Cal. Apr. 10, 2019), *vacated in part*, 2022 WL 3907146 (S.D. Cal. Apr. 19, 2022); *Cal. Found. for Indep. Living Ctrs. v. Cnty. of Sacramento*, 142 F. Supp. 3d 1035, 1046 (E.D. Cal. 2015) (citation omitted) ("Unlike a lay witness, 30(b)(6) deponents may testify on matters outside of their personal knowledge so long as the testimony is based on the organization's knowledge."). *But see Paparelli v. Prudential Ins.*

requirement of Rule 30(b)(6) is thus not a proper basis to limit what is asked of the designated witness during a deposition.[70]  There are two primary reasons behind the Rule allowing examining parties to ask questions beyond the scope of the Rule 30(b)(6) notice.  First, the main thrust of the Court's liberal discovery rules is to allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[71]  Second, the purpose of "adopting Rule 30(b)(6) was not to provide greater notice or protections to corporate deponents, but rather to have the right person at deposition."[72]  "Limiting the scope of a 30(b)(6) deposition to what is noticed in the deposition subpoena frustrates the objectives of Rule 26(b)(1) whenever a deposing party seeks information relevant to the subject matter of the pending litigation that was not specified."[73]  The examining party thus may ask questions outside the scope of the matters set forth in the Rule 30(b)(6) notice subject to "the general deposition rules . . . (i.e., FED. R. CIV. P. 26(b)(1))."[74]

If the examining party asks questions outside the scope of the Rule 30(b)(6) deposition notice, the corporation is under no obligation to have prepared the designee to answer the question.[75]  Further, testimony in response to questions beyond the scope of the notice constitutes the testimony of the designee *in an individual capacity* and not on behalf of the entity, and counsel may note this distinction on the record.[76]  Counsel may not, however, instruct the witness not to

---

*Co. of Am.*, 108 F.R.D. 727, 730 (D. Mass. 1985) (holding that questions directed to a Rule 30(b)(6) deponent cannot exceed the items identified in the notice).

[70] *ChriMar Sys. Inc.*, 312 F.R.D. at 563 (quoting *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. 04-1268, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007)); *see also Moriarty*, 2019 WL 1559143, at *3 (citation omitted).

[71] FED. R. CIV. P. 26(b)(1).

[72] *King*, 161 F.R.D. at 476.

[73] *Detoy v. City & Cnty. of S.F.*, 196 F.R.D. 362, 366 (N.D. Cal. 2000).

[74] *King*, 161 F.R.D at 476.

[75] *Id.*

[76] *See, e.g.*, *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 165 (S.D.N.Y. 2008) (citing cases) ("Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are merely treated as the answers of the individual deponent."); *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 99 (D. Md. 2012) (citations omitted) ("The deponent's answers to questions outside the scope of the notice will not bind the organization, and the organization cannot be penalized if the deponent does not know the answer."); *Detoy*, 196 F.R.D. at 367 ("Counsel

answer the question because Rule 30 authorizes that instruction "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[77]  If none of the enumerated objection grounds exists, the objection may be noted on the record, but the examination still proceeds with the testimony taken subject to any objection.[78]

### 3.  Whether Affiliate's Information is "Reasonably Available"

Unlike ordinary depositions of lay witnesses whose testimony is limited to information within their personal knowledge,[79] Rule 30(b)(6) expressly provides that the designated deponent "must testify about information known or reasonably available to the organization."  Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters in which that designee was personally involved; the corporate representative must be prepared to testify concerning matters within the corporate knowledge of the organization, not simply within the knowledge of any other person or entity.[80]

Generally, "[i]f [the corporation] does not possess such knowledge as to so prepare [the witness] or another designate, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'"[81]  But, as the Fifth Circuit recognized in *Brazos River Authority v. GE Ionics, Inc.*, the "reasonably available" language of Rule 30(b)(6) extends to information held by "other sources."[82]  The Fifth

---

[77] FED. R. CIV. P. 30(c)(2).
[78] *Id.*
[79] *United States v. Shah*, 95 F.4th 328, 376 (5th Cir. 2024) (citing FED. R. EVID. 701).
[80] *See Robinson v. Nexion Health At Terrell, Inc.*, 312 F.R.D. 438, 441 (N.D. Tex. 2014) (citation omitted) ("[B]ecause under Rule 30(b)(6), the designated witness acts as the agent for the corporation, if a certain fact is within the collective knowledge or subjective belief of the organization, the designee should be prepared on the issue by the organization and allowed to testify as to it even if it is not within her direct personal knowledge."); *Brazos River Auth.*, 469 F.3d at 433 (holding that corporate party violated Rule 30(b)(6) by failing to prepare its designee with respect to issues that, although not within his personal knowledge, were within the corporate knowledge of the organization).
[81] *Tiemann v. Yeres*, No. 18-301, 2019 WL 919013, at *3 (W.D. Tex. Feb. 22, 2019) (quoting *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995)).
[82] 469 F.3d at 433.

may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party.").

Circuit has not, however, specifically addressed whether an affiliate constitutes an "other source," whether information known by an affiliate is "reasonably available" to the deponent, or when a Rule 30(b)(6) deponent must be educated on information known by its affiliate.

The majority of courts to address the issue have recognized that an organizational spokesperson's responsibility for matters "reasonably available" to the organization can include the responsibility to obtain information from former employees, affiliates, and other sources.[83] "The crux of the matter is not the identity of the holder or the location of the information, but whether the organization may obtain that information through reasonable efforts."[84]

"The determination of whether information is known or reasonably available to a corporation requires a fact-specific analysis."[85] In conducting that fact-specific analysis, some courts have looked to the Rule 34(a) "possession, custody or control" standard for guidance to find that a parent must produce a witness prepared to testify based on knowledge obtained from its subsidiaries and affiliates when the subsidiaries and affiliates are within its control.[86] (The

---

[83] *Anstead v. Va. Mason Med. Ctr.*, No. 21-00447, 2022 WL 1641425, at *4 (W.D. Wash. May 24, 2022) (citing *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996); *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011); *Int'l Bd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-02007, 2013 WL 627149, at *5 (D. Colo. Feb. 19, 2013) ("The majority view appears to be that information is within a deponent's 'control' and thus 'reasonably available' for purposes of Rule 30(b)(6) when the deponent 'either can secure [information] from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit.'" (Internal citation omitted.))); *Oliver v. Greenwell*, No. 19-137, 2023 WL 2524901, at *1 (E.D. Mo. Mar. 15, 2023) (noting the general rule that an organization must produce a representative to testify about information "reasonably available" to the organization if the information is in the possession of a related entity within its "control").

[84] *Anstead*, 2022 WL 1641425, at *4.

[85] *Townsend v. AutoZone Stores, LLC*, No. 16-04036, 2017 WL 2790553, at *2 (W.D. Ark. June 27, 2017) (quoting *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010)).

[86] *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01-3016, 2002 WL 1835439, at *2 (S.D.N.Y. Aug. 8, 2002); *see also Sanofi-Aventis*, 272 F.R.D. at 395 ("The availability of information in the possession of a related company turns on the facts of each case, in particular as they relate [to] the 'control' standard of Rule 34(a)."); *Int'l Bd. of Teamsters*, 2013 WL 627149, at *5 (citation omitted) ("Courts have frequently used the 'control' standard of Rule 34(a) as a guideline to determine whether information of corporate affiliates is 'reasonably available' to the deponent."). Under the Rule 34 control standard, "a corporate party may be required to produce documents within the possession, custody, or control of a sister corporation or other corporate affiliate." *Mfrs. All. Ins. Co. v. Brencorp, Inc.*, No. 15-0140, 2016 WL 11745984, at *10 (N.D. Ga. Aug. 3, 2016) (quoting *Anz. Advanced Techs. LLC*, 2011 WL 814663, at *9) (quoted case's name fixed). For purposes of Rule 34, control can exist even if the documents are physically located with a corporate party's affiliate. *See, e.g.*, *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*,

"control" standard is addressed in Section III(B)(1) *supra*.)  Using the Rule 34 control standard, courts have held that Rule 30(b)(6) "does not require one entity which is not under the control of a second entity to inquire into and testify as to the knowledge of the second entity".[87]  Others courts, however, have found that the standard applicable to Rule 30(b)(6) differs from the Rule 34 standard,[88] holding that a parent corporation is not obligated "to acquire all of the knowledge of the subsidiary on matters in which the parent was not involved."[89]  Thus, even if a Rule 30(b)(6) deponent has "control" over another entity, it need not obtain information from that entity when that entity was not involved in the underlying transaction.

### E.  <u>Governing Standards for Pending Motions</u>

Rule 37(a) authorizes a party to file a motion to compel discovery.  In response to a motion, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.[90]  Likewise, under Rule 26(c) a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).  A protective order may forbid discovery or specify terms for discovery.  *Id.* at 26(c)(1)(A)-(B).  The party seeking the protective order bears the burden of

---

No. 20-3374, 2022 WL 17665686, at *2 (E.D. La. Dec. 14, 2022) (Vance, J.) (citations omitted) ("[Corporate party's] relationship with its corporate affiliate demonstrates that [it] has control over their documents for purposes of Rule 34. Courts routinely order parties to produce documents that belong to their 'corporate relatives.'").

[87] *Erenler v. TJM Props., Inc.*, No. 21-0671, 2022 WL 18492699, at *6 (M.D. Fla. Nov. 7, 2022) (quoting *Mfrs. All. Ins. Co.*, 2016 WL 11745984, at *10).

[88] *Townsend*, 2017 WL 2790553, at *4; *see also In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. 1428, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006); *Zenith Elecs. LLC v. Vizio, Inc.*, No. 8-85, 2009 WL 3094889, at *2 (S.D.N.Y. Sept. 25, 2009) (citing *In re Ski Train* in holding that a subsidiary corporation did not have sufficient access to or ability to obtain documents of the parent company to require the subsidiary to produce those documents); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-5571, 2009 WL 8588405, at *3-5 (citing *In re Ski Train* in holding that parent corporation did not have to produce documents that it did not have the practical ability to obtain from its wholly-owned subsidiary, as these documents did not "ordinarily flow freely between parent and subsidiary").

[89] *In re Ski Train*, 2006 WL 1328259, at *9; *see also Coryn Grp. II, LLC*, 265 F.R.D. at 239 (citations omitted) (finding the knowledge of affiliate entities was reasonably available to a corporate 30(b)(6) deponent where the entities operated as a unit, shared information, had officers in common, and "no convincing evidence ha[d] been provided to establish that the information sought [wa]s not known or reasonably available to [the corporate deponent]").

[90] *Quarles*, 894 F.2d at 1485 (quoting *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)); *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 463 (N.D. Tex. 2015) (citation omitted); *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017) (same).

showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[91]   Courts have superimposed a somewhat demanding balancing of interests approach to the Rule, comparing the hardship to the party against whom discovery is sought against the probative value of the information to the other party and considering any relevant public interests in the analysis.[92]

The trial court enjoys wide discretion in setting the parameters of discovery and issuing a protective order:[93]   "As a general proposition, a district court [may] exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion."[94]

## IV.   ANALYSIS

### A.   CEVA Defendants' Motion for Protective Order and Plaintiffs' Motion to Compel Regarding Rule 30(b)(6) Deponent

The CEVA Defendants ask that the Court issue a protective order ruling that (a) the Rule 30(b)(6) testimony of each CEVA Defendant will not bind any other CEVA party nor will the designated deponent be deemed a corporate representative of any other CEVA Defendant and (b) each CEVA Defendant need not testify as to knowledge or information of other CEVA entities. ECF No. 108-1 at 10.   On the same issue, Plaintiffs seek an order compelling the CEVA Defendants to produce a Rule 30(b)(6) designee prepared to testify as to information "reasonably available" to the CEVA Defendants.   ECF No. 111.

Plaintiffs' Rule 30(b)(6) notice includes the following definition of "CEVA Affiliates":

---

[91] *BDO USA, L.L.P.,* 876 F.3d at 698 (quoting *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998)).

[92] *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016).

[93] *Id.* at 564 (noting that Rule 26 gives the court wide discretion to craft flexible and nuanced terms of discovery); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

[94] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citations omitted).

"CEVA AFFILIATE(S)" means any entity which is under common ownership or control or a subsidiary of CEVA Logistics AG or other common parent company, or any entity which is associated with, under common control with or otherwise related to CEVA Singapore through common stock ownership or common directors or officers, as defined in 46 C.F.R §532.3(e). For the avoidance of doubt, Plaintiffs contend that the following companies were involved in the shipments that are the subject of this lawsuit, acted as the principals or agents of the deponent, and are sufficiently related to the deponent to require production of DOCUMENTS, ESI, or COMMUNICATIONS, and testimony based on information in the possession, custody or control of each: CEVA LOGISTICS SINGAPORE PTE LTD, PYRAMID LINES SINGAPORE PTE LTD, CEVA FREIGHT LLC, CEVA LOGISTICS (THAILAND) LTD a.k.a. CEVA FREIGHT (THAILAND) LTD., CEVA LOGISTICS INDONESIA a.k.a. PT CEVA FREIGHT INDONESIA, and non-parties CEVA Logistics Indonesia, CEVA Logistics Malaysia, CEVA Logistics (U.S.), Pyramid Lines Ltd. Hong Kong, CEVA Freight (Thailand) Ltd., and any other CEVA Logistics entity or CEVA Freight entity falling under the CEVA Logistics AG umbrella or other common parent, regardless of whether that entity is a party to this litigation.

ECF No. 111-9 at 203. The CEVA Defendants object on the bases that this definition seeks to elicit admissions and information outside of the personal knowledge of the subject deponent and constitutes information held by named, but unserved parties and non-parties, arguing that the CEVA Defendants should not be compelled to testify regarding information about these separate and distinct entities. ECF No. 108-1 at 2-4.

A Rule 30(b)(6) deposition is fundamentally different from a Rule 30(b)(1) deposition precisely because it *requires* the deponent's designee to testify about matters known by the collective entity, even if such information falls outside of his personal knowledge or involvement and was obtained based on information "reasonably available" to the entity.[95] Contrary to the CEVA Defendants' arguments, the fact that Plaintiffs have named, but not served, other CEVA affiliates has no bearing on the issue of whether information is "reasonably available" to the CEVA

---

[95] *See Brazos River Auth.*, 469 F.3d at 433-34 (recognizing that Rule 30(b)(6) deponent is obliged to go beyond his personal knowledge and address designated matters based on information reasonably available to the entity); *see also Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907 (5th Cir. 2010) (finding the trial court erred in allowing Rule 30(b)(6) deponent to provide trial testimony outside of his personal knowledge absent an applicable hearsay exception).

Defendants. As another court recently recognized, the crux of the matter is not the identity of the holder or the location of the information but whether the organization may obtain that information through reasonable efforts.[96] This rationale applies equally, whether the affiliate is a named, unserved party or even a non-party.

The CEVA Defendants' request for a protective order recognizing that the Rule 30(b)(6) testimony of each CEVA Defendant will not bind any other CEVA party nor will the designated deponent be deemed a corporate representative of any other CEVA Defendant is unnecessary. Indeed, the CEVA Defendants cite no authority suggesting that a Rule 30(b)(6) deponent's designee's testimony may be deemed testimony of another entity not named in the deposition or that one party's admission can be used against another entity. The use of depositions is governed by Rule 32, which provides that a deposition may be used for any purpose if the deponent who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6). Fed. R. Civ. P. 32(a)(3). This rule does not contemplate that designating a witness as one entity's Rule 30(b)(6) designee would deem him to be the designee of another entity not named in the Rule 30(b)(6) notice simply because the entities may be related.

In support of their second request, Defendants cite *In the Matter of Torch*, No. 94-2300, 1996 WL 63091 (E.D. La. Feb. 12, 1996), and *Pamlab, L.L.C. v. Rite Aid Corp.*, No. 04-1115, 2005 WL 589573 (E.D. La. Mar. 3, 2005), to argue that a party's obligations under Rule 30(b)(6) categorically do not extend to affiliates' information. In *Torch*, Judge Duval sustained the objection to then Magistrate Judge Lemelle's ruling that a corporate deponent would be required to obtain information from two affiliates rather than simply defer to those co-defendant entities. In his four-paragraph decision, Judge Duval held that Rule 30(b)(6) requires each corporate party

---

[96] *Anstead*, 2022 WL 1641425, at *4.

designate its own knowledgeable witness to testify.  Likewise, in *Pamlab*, Judge Shushan sustained, without analysis, Rite Aid's objection to a Rule 30(b)(6) notice that required it to provide information about affiliates.[97]

Neither *Torch* nor *Pamlab*, however, mentioned the "reasonably available" standard explicitly specified in Rule 30(b)(6) nor did either provide any analysis for the decision.  Further, both cases were decided before the Fifth Circuit's *Brazos* decision in which the court explicitly recognized that Rule 30(b)(6) imposes an obligation on a corporate defendant to "prepare the designee to the extent matters are reasonably available, *whether from documents, past employees, or other sources*."[98]  Information available from "other sources" may, in appropriate situations, include affiliates.

Of course, finding that information is "reasonably available" is not equivalent to "piercing the corporate veil" because the focus is the practical ability to obtain the materials, not a specific corporate relationship.[99]  To determine whether the affiliates' information is "reasonably available" to the CEVA Defendants, this Court must conduct the fact-dependent analysis focusing on the specific relationship between the particular CEVA Defendant deponent and the identified parent, subsidiary or affiliated entity (i.e., common relationships, shared ownership or management, routine exchange of documents between the corporations in the ordinary course of business, benefit or involvement of the nonparty in the transaction).  Recognizing the varying decisions addressing the issue, this Court finds that mere "control" under Rule 34 does not automatically render information known by an affiliate as "reasonably available" for purposes of Rule 30(b)(6) when the affiliate had no role or involvement in the underlying transaction.  The

---

[97] 2005 WL 589573, at *1.
[98] 469 F.3d at 433 (emphasis added).
[99] *See Anz Advanced Techs. LLC*, 2011 WL 814663, at *9 (quoting *Uniden Am. Corp.*, 181 F.R.D. at 306; *Steele Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006)).

more persuasive standard is that which holds information to be "reasonably available" for purposes of Rule 30(b)(6) when the corporate deponent either can secure the information from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit.[100]

The CEVA Defendants' reliance on *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01-3016, 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002), and *Robinson v. Nexion Health At Terrell, Inc.*, 312 F.R.D. 438 (N.D. Tex. 2014), to argue that Rule 30(b)(6) limits "reasonably available" information from a corporate relative to that involving a controlling parent-subsidiary relationship or when the same person is president of both entities is misplaced. Numerous courts recognized that this obligation extends to corporate sisters or affiliates, not simply a controlling parent-subsidiary relationship.[101]  Further, Rule 30(b)(6) imposes a duty on the deponent to prepare based on all sources "reasonably available," even if that source is external to the corporate deponent.[102]

Likewise unpersuasive is the CEVA Defendants' characterization of *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391 (D.N.J. 2011), as requiring the entities to act together in a particular task of the underlying transaction.[103]  *Sanofi-Aventis* does not suggest that the entities must act together on every aspect of the transaction.  Indeed, in that case, the sister corporation's information was "reasonably available" to the Rule 30(b)(6) deponent because the entities acted

---

[100] *Int'l Bd. of Teamsters*, 2013 WL 627149, at *5 (quoting *Sanofi-Aventis*, 272 F.R.D. at 394).

[101] *See Mfrs. All. Ins. Co.*, 2016 WL 11745984, at *10, *12 (finding a Rule 30(b)(6) deponent did not meet its obligation to prepare its designee with its corporate affiliate's information when it was reasonably available by being under the deponent's Rule 34(a) control and actual ownership and direct control unnecessary for Rule 30(b)(6)); *Sanofi-Aventis*, 272 F.R.D. at 395 ("[K]nowledge from corporate affiliates can be 'reasonably available' to a 30(b)(6) deponent in certain instances.  Direct, legal control over the related entity is not required. . . . The availability of information in the possession of a related company" depends on whether the facts reflect the deponent has Rule 34(a) control.).

[102] *Robinson*, 312 F.R.D. at 441 (quoting *Brazos River Auth.*, 469 F.3d at 433).

[103] The CEVA Defendants also refer to many factors the *Sanofi-Aventis* court found to indicate the Rule 30(b)(6) deponent and affiliate had a closer relationship than simple affiliation and thus establish the former can obtain documents from the latter as needed to then note the CEVA entities are "separate and distinct."  While this issue is not dispositive, the CEVA Defendants have merely provided a conclusion without explanation.

together to *complete* the transaction (i.e., the FDA approval application). The sister corporation developed and manufactured the drug, and the deponent used information from that development for the FDA application.[104] For these reasons, the CEVA Defendants' objection based solely on corporate separateness is overruled. The CEVA Defendants need not educate their Rule 30(b)(6) designees based on information known by affiliates who were not involved/had no role in the underlying transaction and when the CEVA Defendants cannot secure the information from the affiliate to meet its own business needs. As to CEVA affiliates that were involved in the transaction (specifically, CEVA Freight Thailand and CEVA Logistics Indonesia), CEVA Singapore and CEVA Logistics Thailand must obtain the information necessary to educate the designee to respond to the topics (which topics must be identified with particularity as described in Section III(D)(1) *supra*).

Plaintiffs have established that information of CEVA Freight Thailand is reasonably available to CEVA Singapore. Both are under common ownership;[105] CEVA Singapore produced the cargo condition surveys commissioned by CEVA Freight Thailand;[106] and CEVA Singapore's initial disclosure of involved witnesses includes CEVA Freight Thailand personnel.[107] It thus appears that CEVA Singapore can secure information from CEVA Freight Thailand to meet its business needs.[108] Further, CEVA Freight Thailand acted with CEVA Singapore to effect the

---

[104] *See Sanofi-Aventis*, 272 F.R.D. at 395-96.
[105] *See* ECF Nos. 111-9 at 312-17 (listing all subsidiaries of the then parent company CEVA Logistics AG in its 2020 Annual Report); 111-10 at 64-66 (listing subsidiaries of now parent company CMA CGM, the acquirer of CEVA Logistics AG, in its 2021 Consolidated Financial Statements).
[106] ECF Nos. 111-6 at 32; 111-7 at 1.
[107] *See* ECF No. 111-10 at 104-05.
[108] *See Sanofi-Aventis*, 272 F.R.D. at 395 (finding common ownership and production of documents and witnesses from corporate affiliate evidenced the Rule 30(6)(b) deponent could secure documents from the affiliate in the ordinary course of business); *see also Bureau Veritas*, 2022 WL 17665686, at *3 (citing *Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 20-68, 2020 WL 10046089, at *14 (E.D. Tex. July 8, 2020) (party's control over documents of non-party was evidenced by, among other things, the fact that the party had already produced some of nonparty's documents)).

underlying natural rubber shipments transaction.  The surveys that the former commissioned and possesses are "relevant to a central issue in this litigation," the condition of the rubber during transport,[109] and part of the process CEVA Singapore and other CEVA entities undertook to complete the shipments.[110]

CEVA Freight Thailand's information is also reasonably available to CEVA Logistics Thailand for the same reasons.  Common ownership,[111] production of the cargo condition surveys,[112] and the inclusion of CEVA Freight Thailand personnel in its initial disclosure of involved witnesses[113] evince CEVA Logistics Thailand can secure information from CEVA Freight Thailand to meet its business needs.  And for the same reasons as for CEVA Singapore, CEVA Freight Thailand acted with CEVA Logistics Thailand in completing the shipments.

Plaintiffs have also established that information of CEVA Logistics Indonesia is reasonably available to CEVA Singapore.  Plaintiffs have established both entities are under common ownership and CEVA Singapore included CEVA Logistics Indonesia personnel as witnesses in its initial disclosures.[114]  While CEVA Singapore has admitted to producing documents from CEVA Logistics Indonesia, it has not specified whether that production included any internal document or simply the types of documents that would be available to any customer in an arms-length transaction.[115]  The admission of production strongly suggests that CEVA Singapore can secure information from CEVA Logistics Indonesia to meet its business needs, but that issue is not

---

[109] *See Alimenta (U.S.A.), Inc. v. Aneheuser-Busch Cos.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983) (finding plaintiff corporation had Rule 34(a) control of sister affiliate that participated in the transaction and had relevant documents and thus had to produce same).
[110] *See Sanofi-Aventis*, 262 F.R.D. at 935 (noting that Rule 30(b)(6) deponent relied on affiliate in its submissions made to the FDA in connection with its abbreviated new drug application).
[111] *See* ECF Nos. 111-9 at 312-17; 111-10 at 64-66.
[112] ECF Nos. 111-6 at 32; 111-7 at 1.
[113] *See* ECF No. 111-10 at 104-05.
[114] *See* ECF Nos. 111-9 at 312-17; 111-10 at 64-66, 104-05.
[115] ECF No. 124 at 5; *see infra* text accompanying note 125.

entirely clear.  In addition, both acted together in the underlying transactions, with a CEVA Singapore employee negotiating both the Goodyear and Michelin customer proposals,[116] which CEVA Singapore and CEVA Logistics Thailand accepted, respectively, as agents for and on behalf of CEVA Logistics Thailand and CEVA Logistics Indonesia.[117]  Thus, through its agents, CEVA Logistics Indonesia acted together with CEVA Singapore in effectuating the rubber shipments.

CEVA Logistics Indonesia's information is also reasonably available to CEVA Logistics Thailand for the same reasons.  There is a strong suggestion that CEVA Logistics Thailand can secure information from CEVA Logistics Indonesia to meet its business needs,[118] and both acted together in the underlying transactions.  CEVA Logistics Thailand was a contracting party in one proposal and CEVA Logistics Indonesia' co-principal in both.  Thus, the entities acted together to complete the rubber shipments.

Plaintiffs have not, however, established that CEVA Logistics Indonesia's information is reasonably available to Pyramid Lines or CEVA Freight. The evidence provided suggests these entities appear to have performed limited services akin to that provided by unrelated parties in arms-length transactions in completing the rubber shipments.  For the same reasons, CEVA Freight Thailand's information would not be reasonably available to these CEVA Defendants either.  If, however, Plaintiffs have additional evidence to establish these CEVA Defendants have the ability to secure the materials from these entities to meet their own business needs, have effective control over them, or had more involvement and benefit from the transactions, the outcome could be different.

---

[116] *See* ECF No. 111-6 at 8-11, 28-30 (describing an email chain involving CEVA Singapore employee negotiating with Goodyear personnel regarding Goodyear's proposal for its rubber shipment and then describing email chain in which same CEVA Singapore employee returned signed copy of Michelin proposal to Michelin employee that negotiated the proposal).
[117] *Id.* at 12, 30.
[118] *See* ECF Nos. 111-9 at 312-17; 111-10 at 64-66, 104-05; 124 at 5; *infra* text accompanying note 125.

Likewise, Plaintiffs have not provided sufficient information to establish that information from CEVA Logistics in Houston is reasonably available to the CEVA Defendants. Again, requiring a Rule 30(b)(6) deponent to prepare its designee with information possessed by its affiliate hinges of the latter entity being in fact a specific affiliate of the deponent. Plaintiffs have not established this necessary connection. Plaintiffs cite to documents listing "all the CEVA entities" of the global umbrella,[119] but no document establishes which CEVA affiliate is the entity in Houston.[120]

Nor have Plaintiffs sufficiently evidenced that information of Pyramid Lines Ltd. Hong Kong or CEVA Logistics Malaysia is reasonably available to any of the CEVA Defendants. Despite naming the former under "CEVA AFFILIATE(S)," Plaintiffs make no attempt to show Pyramid Lines Ltd. Hong Kong's information is within any of the CEVA Defendants' Rule 34(a) control nor that the entity acted together with them in completing the shipments. Regarding CEVA Logistics Malaysia, Plaintiffs have not evidenced the entity's involvement in the rubber shipments. At this stage, Plaintiffs points to one person having knowledge of services provided by CEVA. Without more evidence,[121] potential knowledge by one employee is insufficient to establish the entity acted with any CEVA Defendants for purposes of control under Rule 34 or "reasonably available" within Rule 30(b)(6).

---

[119] ECF No. 114 at 12 (citing ECF Nos. 111-9 at 312-17; 111-10 at 64-66).
[120] *Compare* ECF No. 111-9 at 316-17 (listing CEVA entities that are incorporated and have their principal place of business in the United States as of December 31, 2020), *and* ECF No. 111-10 at 65-66 (listing "main" entities, including multiple located in the United States, as of December 31, 2021), *with* ECF No. 111-8 at 1 (noting the discharge survey conducted in New Orleans was done at the request of a "CEVA Logistics" entity located in Houston), *and* ECF No. 111-10 at 83-103 (email chain regarding the rubber shipments that involved an employee of a CEVA Logistics entity located in Houston).
[121] ECF Nos. 111-10 at 105; 114 at 14.

**B.  Motions to Compel Documents by Plaintiffs and CEVA Defendants**

Both parties have filed Motions to Compel, primarily focused on whether each party has sufficiently searched and produced all documents within their actual or constructive possession, custody or control (i.e., affiliates' documents). [122]  Plaintiffs argue that the CEVA Defendants' responses, as supplemented, are incomplete because they include objections based on corporate separateness and do not confirm that all responsive information in the CEVA Defendants' actual or constructive possession, custody or control (i.e., from affiliates) has been produced.  ECF No. 111-1 at 5-7, 22-23.  The CEVA Defendants argue that Plaintiffs have improperly failed to produce (or redacted) documents on the basis of their own restrictive definition of relevance as well as those in the possession of their own affiliates.  ECF No. 124 at 3, 5.  They seek supplemental responses to Requests for Production Nos. 28 and 29 and Interrogatory nos. 8, 9, and 15 from both Michelin and Goodyear.  ECF No. 118-1 at 14.

Initially, the boilerplate objections asserted by both sides (e.g., compound, vague and ambiguous, overbroad, not relevant and disproportional, unduly burdensome[123]) are impermissible and not tied to the specific discovery request; therefore, they are overruled.  Likewise, responding to the discovery a litany of general objections followed by the phrase "without waiving said objections" before responding is improper and confusing.  Any document not produced must be specifically identified so that each party can determine whether responses are complete.

Further, as outlined above, the threshold for relevance is lower at the discovery stage than the threshold for relevance of admissibility of evidence at trial.  Discovery is proper if the matter bears on, or reasonably could lead to other matter that could bear on, any claim or defense.  The

---

[122] Plaintiffs' Motion to Compel also seeks relief with respect to the Rule 30(b)(6) issue, which is addressed in Section IV(A) *supra*.
[123] ECF Nos. 111-9 at 107-136, 150-59; 118-5; 118-6.

party opposing discovery on the basis of relevance must establish that the information sought can have no possible bearing on a claim or defense, and if relevance is in doubt, discovery must be allowed.

The moving party bears the burden to establish that the responding party has "control" over an affiliate for purposes of Rule 34.[124]  When determining the sufficiency of control under Rule 34, the nature of the relationship between the party and the non-party is key.  Applying that standard, judges in this circuit regularly require parties to produce documents in the possession of a corporate relative (e.g., parent, subsidiary or sibling/affiliate) when the party has control over the corporate relative's documents for purposes of Rule 34.[125]  And a party's production of some documents from an affiliate has been considered evidence of sufficient control.[126]

The CEVA Defendants requested documents concerning Michelin's and Goodyear's policies, procedures, and manuals concerning the loading, packaging, and transit of natural rubber for the past three years (Request for Production No. 28), which they contend will support advanced act of shipper and/or insufficiency of packing defenses under the Carriage of Goods by Sea Act.[127]  In response, Plaintiffs produced packing specifications from Goodyear dated January 1, 2012, which Plaintiffs contend were the applicable policies for the shipments, and packing specifications from Michelin with redactions made to avoid disclosure of confidential and perceived irrelevant information to its competitor, co-plaintiff Goodyear.[128]  The packaging of the natural rubber and the rubber's condition throughout the completion of the transactions are core issues in this action, thus Plaintiffs' packaging specifications are discoverable because they are relevant to the CEVA

---

[124] *Est. of Monroe*, 2004 WL 737463, at *10.

[125] *See, e.g.*, *Bureau Veritas*, 2022 WL 17665686, at *2–3; *S. Filter Media, LLC*, 2014 WL 4278788, at *5.

[126] *Bureau Veritas*, 2022 WL 17665686, at *3 (citing *Lozada-Leoni*, 2020 WL 10046089, at *14 (party's control over documents of non-party was evidenced by, among other things, the fact that the party had already produced some of nonparty's documents)).

[127] ECF No. 118-1 at 2, 14.

[128] ECF No. 125 at 11-12, 15.

Defendants' defenses.  Relevant documents may be marked confidential but producing them with extensive redactions, rather than other protective measures such as designating same for attorneys' eyes only, is improper.  Therefore, Plaintiffs must produce supplemental responses to the CEVA Defendants' Request for Production No. 28, limited, however, to responsive documents from two years prior to the subject shipments through the date of the shipments concerning only natural rubber of the same kind and quality as that of the subject shipments.  For the same reasons and as limited, Plaintiffs must produce supplemental responses to the CEVA Defendants' Request for Production No. 29 and Interrogatories Nos. 8 and 9.[129]  Also for the same reasons, Plaintiffs must produce supplemental responses to the CEVA Defendants' Interrogatory No. 15.[130]

Plaintiffs ask that the CEVA Defendants be ordered to produce all responsive documents in the possession of non-party CEVA entities that were involved in the subject transactions, particularly CEVA Freight Thailand, CEVA Logistics Indonesia, and the CEVA Logistics entity in Houston, or certify in supplemental responses that no further responsive documents exist.[131] Because of the factors described above, Plaintiffs have established that CEVA Singapore and CEVA Logistics Thailand have Rule 34(a) control of CEVA Freight Thailand.[132]  If CEVA Singapore and CEVA Logistics Thailand have in fact produced any internal documents from CEVA Logistics Indonesia or CEVA Freight and Pyramid Lines produced internal documents of CEVA Freight Thailand and CEVA Logistics Indonesia, then same would evidence sufficient Rule 34(a) control to require complete productions and/or certifications that no further documents exist.[133]

---

[129] ECF No. 111-4 at 2.
[130] *Id.*
[131] ECF No. 111-1 at 14-15, 18.
[132] *See supra* text accompanying notes 106-09, 112-14.
[133] *See Bureau Veritas*, 2022 WL 17665686, at *2–3; *S. Filter Media, LLC*, 2014 WL 4278788, at *5.

While the CEVA Defendants argue that Plaintiffs have Rule 34(a) control over their nonparty affiliates (particularly Michelin Siam Co., Ltd., Michelin ROH Co., Ltd., and Goodyear Aviation Tire Asia Pacific),[134] they have not provided sufficient evidence to determine whether or not Rule 34(a) control exists.  Although Plaintiffs do not dispute that these entities are under common ownership, they dispute any involvement by these entities in the underlying transaction and argue the documents involved different transactions and thus are not relevant.[135]  Neither party addresses any of the other factors evidencing  Rule 34(a) control (e.g., exchange or intermingling of directors, officers or employees of the two corporations, exchange of documents between the corporations in the ordinary course of business, any benefit or involvement of the nonparty corporation in the transaction, and involvement of the non-party corporation in the litigation).  Common ownership alone is insufficient to establish Rule 34(a) control.  Absent any evidence as to the other relevant factors for Rule 34 control, there is no need to reach the question of whether the information is relevant.  Should the CEVA Defendants provide sufficient evidence of Rule 34(a) control, relevance will be addressed at that time.

Redactions based on relevance are not invocations of privilege that must be specified on a privilege log.  A privilege log is required only when a party seeks to withhold from production a relevant document.  To the extent, however, that Plaintiffs have redacted any relevant information on the basis of privilege or work product, they must provide a proper privilege log.

## V.    <u>CONCLUSION</u>

Rule 30(b)(6) explicitly requires that a designee be prepared to testify on behalf of the corporate entity as to the collective knowledge of the entity based on information that is reasonably available.  The Fifth Circuit has held that the reasonably available requirement includes former

---

[134] ECF Nos. 118-1 at 16; 128 at 7-8.
[135] ECF No. 125 at 2-3.

employees and "other sources," which numerous district courts have held contemplates related corporate entities whether applying the "control" standard of Rule 34 or the more restrictive standard requiring some involvement of the related entity in the underlying transaction. For any entity from whom a party exchanges information in the normal course of business or was involved (including acting as agent) for the subject transaction, that entity's information should be reasonably available to the deponent.

As to the written discovery, a motion to compel is not proper in relation to Rule 36 admissions. The CEVA Defendants have responded to the admissions. Plaintiffs may file a motion to determine the sufficiency of an answer or objection under Fed. R. Civ. P. 36(a)(6) or seek expenses incurred in proving same under Fed. R. Civ. P. 37(c)(2). But requesting relief under Rule 37(a)(3) is improper. As to the interrogatories and requests for production, the Plaintiffs must produce supplemental responses to the CEVA Defendants' Requests for Production Nos. 28 and 29 and Interrogatories Nos. 8, 9, and 15, as modified herein. Also, the Court finds that Plaintiffs have established that CEVA Singapore and CEVA Logistics Thailand have sufficient "control" over certain related entities (CEVA Freight Thailand) but not yet over other entities (CEVA Logistics Indonesia and CEVA Logistics in Houston) to fall within the ambit of Rules 33 and 34. Further, the Court overrules the boilerplate objections of both sides and directs that both sides provide supplemental discovery responses. The supplemental responses must specifically state that all responsive documents within the party's actual or constructive possession, custody and control (including those held by the specified affiliates identified herein) have been produced and unambiguously specify whether any document is being withheld from production.

Although both sides have requested an award of costs under Rule 37, the Court has granted in part and denied in part both parties' motions. Given the complexity of the issues and unsettled

nature of the applicable law, the Court declines to award either side fees and costs incurred in connection with these motions.

Accordingly, for the foregoing reasons,

IT IS ORDERED that the CEVA Defendants' Motion for Protective Order (ECF No. 108) is GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that the Motions to Compel (ECF No. 111 and No. 118) are GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that the requests for fees and costs are DENIED.

New Orleans, Louisiana, this _____5th_____ day of November, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE